IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TARIUS D. GANAWAY, # M-08848,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Case No. 15-cv-00784-SMY** |
| ) | |
| **C/O ADAMSON and C/O OCHS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Tarius Ganaway, an inmate who is currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against two Lawrence correctional officers. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

### The Complaint

According to the complaint, Plaintiff was placed in segregation on June 23, 2015 (Doc. 1, p. 2). He was issued a urine- and blood-stained mattress, but no blanket or sheets. The prison staff ignored his requests for a replacement mattress, so he threatened to commit suicide unless they moved him to another cell. In response, Officer Ochs confiscated Plaintiff's personal

property and his prison jumpsuit, leaving him to sleep on the soiled mattress in only his boxers. Plaintiff's back broke out in a rash that itched and burned.

He was placed on suicide watch in a different cell with a different mattress the same week. After coming off of suicide watch on June 29, 2015, Officer Ochs and several other officers moved Plaintiff to a new cell. To Plaintiff's surprise, Officer Ochs delivered the same urine- and blood-stained mattress to his new cell. After dropping it off, Officer Ochs laughed and told another officer that he "might have went (sic) to[o] far on this one [because it] is as wet as a waterbed" (Doc. 1, p. 3). The mattress was wet in multiple spots. Plaintiff could smell the strong stench of urine. He was forced to sleep on the few dry spots he could find.

Plaintiff's rash did not clear up, and he claims that he was sick on multiple occasions. The complaint offers no details regarding the nature of these illnesses. But Plaintiff alleges that he submitted numerous requests for medical attention and received no response and no medical care.

Plaintiff attempted to submit a grievance to complain about these events on July 5, 2015. He admits that he was yelling loudly that evening, as Officer Adamson made his rounds. When the officer asked him to stop, Plaintiff refused to do so because he "did not see the point." In response, Officer Adamson grabbed the grievance from Plaintiff's hand, read it aloud for others to hear, balled it up, and threw it across the gallery. At the same time, Officer Adamson called Plaintiff "childish" and said he was "lying" (Doc. 1, p. 4).

During the ten days that followed, Plaintiff claims that Officer Adamson threw away or withheld Plaintiff's mail. On July 10, 2015, Officer Adamson showed Plaintiff a letter from his daughter that was dated June 27, 2015. He then laughed and walked away. He returned twenty minutes later and said, "Youll (sic) get it when I give it to you" (Doc. 1, p. 5). Plaintiff did not

receive the letter until July 15, 2015, the same date he signed the complaint that he later filed in this action.

Plaintiff now claims that Officer Ochs subjected him to unconstitutional conditions of confinement and denied him adequate medical care by forcing him to sleep without bedding on a urine- and blood-stained mattress, in violation of the Eighth Amendment (Doc. 1, p. 5). He claims that Officer Adamson violated his First Amendment right to access the courts and Fourteenth Amendment due process rights by throwing away his grievances (Doc. 1, pp. 6-7). He also claims that Officer Adamson interfered with his mail, in violation of the First Amendment (Doc. 1, p. 6).

Plaintiff seeks declaratory judgment and monetary damages (Doc. 1, p. 7). In addition, he seeks injunctive relief in the form of an order requiring prison officials to provide him with medical care for his rash and any infection that has resulted. He also requests a blanket and sheets, which were still being denied as of July 16, 2015. Conspicuously absent from Plaintiff's request for injunctive relief is any request for a replacement mattress. Plaintiff also filed a motion seeking a temporary restraining order and a preliminary injunction, which will be discussed in more detail below (Doc. 9).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to reorganize the claims in Plaintiff's *pro se* complaint into seven (7) counts, as set forth below:

**Count 1:** Officer Ochs exposed Plaintiff to unconstitutional conditions of confinement when he forced Plaintiff to sleep on a urine- and blood-stained mattress without any bedding;

| | |
|---|---|
| **Count 2:** | Officers Ochs and Adamson displayed deliberate indifference to Plaintiff's medical needs, in violation of the Eighth Amendment, when they denied him access to medical care for a rash and forced him to continue sleeping without bedding on the urine- and blood-stained mattress that caused the condition; |
| **Count 3:** | Officer Adamson violated Plaintiff's right to due process of law under the Fourteenth Amendment by interfering with his grievances; |
| **Count 4:** | Officer Adamson interfered with Plaintiff's right to access the courts under the First Amendment by disposing of his grievances and preventing him from exhausting his administrative remedies; |
| **Count 5:** | Officer Adamson interfered with Plaintiff's mail, in violation of the First Amendment; and |
| **Count 6:** | Officer Ochs retaliated against Plaintiff for complaining about his mattress verbally and in writing by delivering the urine- and blood-stained mattress to his new cell after further soiling it, denying him access to bedding, and denying him access to medical care, in violation of the First Amendment; |
| **Count 7:** | Officer Adamson retaliated against Plaintiff for filing a grievance seeking medical attention for his rash and complaining about his mattress by interfering with his mail, throwing away his grievances, and denying him access to medical care, in violation of the First Amendment. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts should not be construed as an opinion regarding their merit.

## Claims Subject to Further Review

**Count 1 – Conditions of Confinement**

At this early stage in litigation, the complaint supports an Eighth Amendment claim (**Count 1**) against Officer Ochs for exposing Plaintiff to unconstitutional conditions of confinement. The Eighth Amendment prohibits cruel and unusual punishment and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Gillis v. Litscher*,

468 F.3d 488, 491 (7th Cir. 2006) (citing *Robinson v. California*, 370 U.S. 660 (1962)). To prevail on this claim, Plaintiff must show that the defendants imposed conditions which denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Seiter*, 501 U.S. 294 (1991). He must also show that the defendants acted with a culpable state of mind, which, in this case, is deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The prison official may be held liable under the Eighth Amendment if he knew the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Id*. at 847.

Courts have found that conditions like those described in the complaint may support an Eighth Amendment claim. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing *McCord v. Maggio,* 927 F.2d 844, 846-47 (5th Cir. 1991) (finding Eighth Amendment violation where inmates "were provided mattresses at night which were placed on the sometimes flooded floors of the cells . . . [where they] 'either had to stand up all night or sleep on a wet mattress on the floor'"). The Seventh Circuit has observed that a lack of sanitary conditions, including clean bedding, may qualify as a denial of the "minimal civilized measure of life's necessities." *Gillis,* 468 F.3d at 494; *see also McCord,* 927 F.2d at 846-47; *Maxwell v. Mason,* 668 F.2d 361, 363 (8th Cir. 1981) (stating confinement in isolation without adequate clothing or bedding supports Eighth Amendment claim); *Ramos v. Lamm,* 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state must provide reasonably adequate . . . ventilation, sanitation, bedding, [and] hygienic materials."). Plaintiff has made a threshold showing that the conditions he endured fell below constitutional standards.

The allegations also suggest that Officer Ochs responded to Plaintiff's complaints about the mattress and lack of bedding with deliberate indifference. Rather than offer Plaintiff a

replacement mattress, a new cell, or clean bedding, Officer Ochs allegedly transferred the soiled mattress to Plaintiff's new cell, after further soiling it.  Under the circumstances, **Count 1** against Officer Ochs warrants further review.  Plaintiff did not assert this claim against Officer Adamson, and it is considered dismissed without prejudice against him.

**Count 2 – Deliberate Indifference to Medical Needs**

The complaint also articulates a viable Eighth Amendment deliberate indifference to medical needs claim (**Count 2**) against Officers Ochs and Adamson.  The Eighth Amendment requires the state to provide those it incarcerates with basic medical care.  *Wetzel v. Sheahan*, 210 F.3d 377 (7th Cir. 2000) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998)).  Prison officials violate the Eighth Amendment when they respond to an inmate's serious medical needs with deliberate indifference.  *Farmer,* 511 U.S. at 834; *Gutierrez v. Peters,* 111 F. 3d 1364, 1369 (7th Cir. 1997).  Deliberate indifference may be inferred from an official's intentional interference with treatment prescribed for a prisoner's serious medical condition.  *See, e.g., Hudson v. McHugh,* 148 F.3d 859, 863-64 (7th Cir. 1998); *Ralston v. McGovern,* 167 F.3d 1160, 1161-62 (7th Cir. 1999).

Plaintiff claims that he suffered from a burning and itching rash and numerous undisclosed illnesses after being exposed to the urine- and blood-stained mattress.  These allegations suggest that Plaintiff may have suffered from a serious medical condition, and certainly one that should not have been ignored.  The complaint also suggests that Officers Ochs and Adamson interfered with Plaintiff's access to medical care by either denying his requests for medical attention outright or throwing away his written requests for medical care and his related grievances.  Under the circumstances, **Count 2** shall proceed against both of the defendants.

**Counts 6 & 7 – Retaliation**

Finally, the Court finds that the complaint articulates a colorable retaliation claim against Officer Ochs (**Count 6**) and Officer Adamson (**Count 7**). To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take retaliatory action." *See Perez v. Fenoglio*, --- F.3d ---, 2015 WL 4092294, *10 (7th Cir. July 7, 2015) (citing *Bridges v. Gilbert*, 557 F. 3d 541, 546 (7th Cir. 2009)).

The first element of this claim is satisfied where a prisoner files a non-frivolous grievance. *Id.* (citing *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004)). The denial of medical care (such as the treatment Plaintiff sought for his rash) is considered a deprivation that is likely to dissuade a reasonable person from engaging in future First Amendment activity. *Id.* (citing *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). In this case, Plaintiff claims that Officers Ochs and Adamson responded to the grievances he filed by delaying his mail and denying his access to medical care. At this early stage, these allegations suffice to state a retaliation claim against both defendants. *See* 28 U.S.C. § 1915A(b) (As part of the screening process, "the court shall identify cognizable claims."). **Counts 6** and **7** shall receive further review.

## Claims Subject to Dismissal

**Counts 3 & 4 – Interference with Grievances and Access to Courts**

The complaint fails to articulate a viable due process claim (**Count 3**) or access to courts claim (**Count 4**) against Officer Adamson for interfering with Plaintiff's grievances in an effort

to prevent him from exhausting his administrative remedies before commencing this action. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Put differently, the alleged mishandling of Plaintiff's grievances by Officer Adamson, absent any personal involvement in the underlying deprivation of Plaintiff's constitutional rights, states no claim for relief. **Count 3** shall be dismissed without prejudice.

Plaintiff's argument that Officer Adamson's interference with his grievances prevented Plaintiff from exhausting his administrative remedies and accessing the courts is equally unavailing. A prisoner need only exhaust remedies that are "available" to him. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Johnson v. Litscher,* 260 F.3d 826, 829 (7th Cir. 2001). Remedies are unavailable if a prison official uses affirmative misconduct to prevent a prisoner from exhausting. *See Thomas v. Reese,* 787 F.3d 845, 847 (7th Cir. 2015) (prison officials misinformed inmate in segregation he could not file grievance); *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (prison officials lost grievance). In other words, "[w]hen a prisoner follows proper procedures and prison officials are responsible for mishandling his grievance, . . . [it cannot be said] that the prisoner has failed to exhaust his administrative remedies." *Smith v. Buss*, 364 Fed. Appx. 253 (7th Cir. 2010) (citing *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006)). The unavailability of the administrative grievance procedure does not give rise to an access to courts claim in this context.

Actual or threatened detriment is also an essential element of a constitutional claim for denial of access to the courts. *See Howland v. Kilquist,* 833 F.2d 639, 642–43 (7th Cir. 1987); *Hossman v. Sprandlin,* 812 F.2d 1019, 1021–22 (7th Cir. 1987). No such detriment is apparent in this matter. Plaintiff filed this lawsuit within days or weeks of the alleged constitutional deprivations. His access to the court appears to be unimpeded. **Count 4** fails to state a claim upon which relief may be granted and shall be dismissed without prejudice.

**Count 5 – Mail Interference**

Plaintiff's mail interference claim (**Count 5**) shall be dismissed. He describes a single incident in which Officer Adamson waited five days to deliver a personal letter to Plaintiff. Although he claims that the mail interference is ongoing, Plaintiff cites no other incidents. Instead, he appears to be referring to the ongoing nature of this single incident, which occurred between June 27th and July 15th and involved one letter from his daughter.

A sporadic disruption of mail service will not violate the Constitution. Although the First Amendment "applies to communications between an inmate and an outsider," a valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment." (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir. 1987)). The allegations in the complaint describe a single incident of mail disruption, not a violation of constitutional proportions. Accordingly, **Count 5** against Officer Adamson shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Pending Motion**

1.     **Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 9)**

Plaintiff filed a motion seeking a temporary restraining order ("TRO") and preliminary injunction (Doc. 9). Beyond asking for a TRO and preliminary injunction, however, he does not specify what relief he is seeking at this time and why. As discussed in more detail below, Plaintiff's request for a TRO shall be **DENIED** without prejudice. His request for a preliminary injunction shall be **REFERRED** to a United States Magistrate Judge for further consideration, and he is encouraged to supplement his motion with an addendum setting forth the exact relief he seeks.

Request for TRO

Rule 65(b) of the Federal Rules of Civil Procedure requires a party seeking a TRO to set forth "specific facts" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *Id.* This type of relief is considered drastic and is warranted only "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer*, 511 U.S. 825, 845 (1994).

In his motion, Plaintiff lists each of the incidents set forth above. As for Plaintiff's original claim regarding a soiled mattress, Plaintiff's motion does not mention ongoing exposure to the soiled mattress or denial of bedding. If these deprivations are ongoing, he did not say so. The Court is left to guess what happened with these matters. The Court will not issue a TRO based on conjecture.

With regard to his mail interference claim, Plaintiff maintains that Officer Adamson continues to throw away Plaintiff's mail. However, Plaintiff cites no new incidents.

Again, without more specific facts, not to mention any request for relief aimed at addressing this conduct, the Court finds no reason to grant a TRO on this basis. *See* FED. R. CIV. P. 65(b).

The motion also refers to several new incidents that perhaps suggest a pattern of ongoing harassment by the defendants. First, Plaintiff alleges that Officer Ochs, who works the 7 a.m. to 3 p.m. shift, and Officer Adamson, who works the 3 p.m. to 11 p.m. shift, have denied him food trays (Doc. 9, p. 1). On "several" occasions, Plaintiff has not eaten lunch or dinner. This assertion is very concerning to the Court. The Eighth Amendment requires the State to provide inmates with adequate nutrition. *See Farmer*, 511 U.S. 825, 832 (1994) (prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates"); *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (prisoner's diet must provide adequate nutrition). But Plaintiff does not list the dates or times of each denial, so the Court is unable to assess the scope of the deprivation or conclude that it is ongoing. Without specific facts demonstrating an entitlement to relief, the Court cannot grant Plaintiff's request for a TRO on this basis.

Second, Plaintiff claims that Officer Ochs uses profanity and racial slurs when talking to Plaintiff. This makes Plaintiff feel uncomfortable. The Court certainly does not condone this type of conduct. However, it does not warrant the type of drastic relief Plaintiff seeks, let alone give rise to a constitutional claim. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (upholding dismissal of inmate's claim that correctional officer and prison administrator violated the Eighth and Fourteenth Amendments by using racial epithets); *Patton v. Przbylski*, 822 F.2d 697, 700 (7th Cir. 1987) (although unprofessional and inexcusable, racially derogatory remarks did not support a constitutional claim); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)

(verbal threats and name calling directed at inmate not actionable under Section 1983). The Court also finds no basis for granting a TRO on these facts.

Third, the defendants have allegedly instructed other officers to target Plaintiff for mistreatment. Plaintiff points to two incidents in support of this assertion. On an undisclosed date, Plaintiff was forced to share a cell with an inmate who told internal affairs officers that he would "bloody" Plaintiff, if required to share a cell with him. Officer Mohlenhour allegedly made statements suggesting that he wanted to see Plaintiff hurt in some way. Plaintiff speculates that these incidents resulted from the defendants' efforts to encourage other officers to team up against him. These allegations are conclusory, vague, and speculative. They offer no basis for granting a TRO.

While the Court is very concerned about the heightened risk of ongoing retaliatory conduct by the defendants, given the pending action against them, the Court finds no basis for granting a TRO at this time on the facts Plaintiff sets forth in his motion. For this reason, the request for a TRO shall be denied. However, the denial is without prejudice, and Plaintiff is free to file a new motion at any time it becomes necessary to do so during the pending action.

Request for Preliminary Injunction

Plaintiff's request for a preliminary injunction (Doc. 9) shall be referred to United States Magistrate Judge Philip M. Frazier for further consideration. It is strongly recommended that Plaintiff supplement the motion with a specific request for relief within the next fourteen (14) days, if he would like the Court to consider these requests.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's request for a temporary restraining order (Doc. 9) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that **COUNTS 3, 4,** and **5** shall be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**AS TO COUNTS 1, 2, 6,** and **7**, the Clerk of Court shall prepare for Defendants **C/O ADAMSON** and **C/O OCHS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, including resolution of Plaintiff's motion for a preliminary injunction (Doc. 9).  It is strongly recommended that Plaintiff supplement the motion with an addendum setting forth his specific request for relief within fourteen (14) days (**on or before August 26, 2015**).  Any addendum to Document 9 or other motion filed after the date of this Order that relates to this request for injunctive relief or seeks leave to amend the complaint is also **REFERRED** to United States Magistrate Judge **Frazier**. If it becomes apparent that further action is necessary, the undersigned Judge should be notified immediately.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Frazier** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding the fact that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  August 12, 2015**

s/ STACI M. YANDLE
**U.S. District Judge**
